1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    WADE ROBERT C. HORTON JONES,          No.  2:22-cv-00909-EFB (SS)

12                  Plaintiff,

13          v.                               ORDER

14    KILOLO KIJAKAZAI, Acting
      Commissioner of Social Security,
15
16                  Defendant.

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18    denying his application for disability insurance benefits under Title II of the Social Security Act.

19    ECF No. 1.  The parties' cross-motions for summary judgment are pending.  ECF Nos. 18 & 20.

20    The parties have consented to the jurisdiction of a United States Magistrate Judge for all

21    proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).   ECF No. 21

22    For the reasons provided below, plaintiff's motion for summary judgment is denied and the

23    Commissioner's motion for summary judgment is granted.

24    **I.      Background**

25          On May 1, 2019, plaintiff filed an application for disability insurance benefits (DIB) under

26    Title II of the Social Security Act (Act), alleging disability beginning November 30, 2018.[1]

27    _____

28          [1] Disability Insurance Benefits are paid to disabled persons who meet the insured status
      requirement by having contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.

Administrative Record (AR) 27.  Plaintiff alleged he was disabled due to degenerative disc disease, chronic obstructive pulmonary disease (COPD), numb left leg, and hip and neck pain.  AR 190.  Plaintiff's application was denied initially and upon reconsideration.  AR 27.  After a telephonic hearing before an administrative law judge (ALJ) on November 19, 2020, at which plaintiff was represented by counsel (AR 42-72), the ALJ published an unfavorable decision on March 3, 2021.  AR 27-37.

At the hearing, plaintiff testified that he began seeing a doctor after he slipped in the shower and hit his head.  AR 49.  He was also injured in the course of his work at an automotive lube shop.  AR 49.  Plaintiff testified that he could "barely breathe most of the time," was "always in pain," and spent most of his time in bed.  AR 50.  His breathing problems developed in November 2019, and he had been using a prescribed portable oxygen tank since that time.  AR

---

Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

2

50-51.  He testified that his breathing problems made it hard to walk around the house and to perform his previous activities such as housework, working on the car, and going grocery shopping.  AR 52.  Plaintiff reported that his condition had "significantly worsened" and his activities had become more limited since the alleged onset date of November 30, 2018.  AR 57-58.  Upon questioning by the ALJ, plaintiff testified that he quit smoking in the fall of 2019 and was on the anti-smoking medication Chantix.  AR 55.  He further testified that he did not think he could sit, stand, and walk for a combined total of eight hours in an eight-hour workday, and would have to lie down for a significant portion of that time.  AR 69-70.

Plaintiff's wife Esther Jones testified that plaintiff could "barely breathe" and was visibly in pain when he attempted to perform tasks.  AR 54.  She testified that he could go to the bathroom and dress himself, but that she helped him put on his socks because he had breathing problems when he leaned over.  AR 54.  He did not go shopping with her, and his activities were "very limited."  AR 55-56.  Ms. Jones testified that plaintiff used a portable oxygen device to help with breathing and was in bed "the majority of the time."  AR 55.

Vocational expert (VE) Mark Tasso testified that a person with the same age, education, and work experience as plaintiff, limited to sedentary work as set forth in the determined residual functional capacity (RFC), could perform jobs as a lens inserter, addresser, and laminator.  AR 63-64.  Mr. Tasso testified that the "[u]se of a portable, supplemental oxygen [tank] does not preclude or . . . eliminate the number of positions or jobs in the national economy.  However, the underlying respiratory restrictions could" if they resulted in the employee being off-task for more than twenty-five minutes a day in addition to regular breaks.  AR 64-66.  Mr. Tasso confirmed that he had considered plaintiff's back pain and limitations in walking, sitting, and standing, in addition to his breathing problems, in assessing available jobs.  AR 66-67.

The ALJ determined that plaintiff had not been under a disability during the period at issue (November 30, 2018 through March 3, 2021), finding as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since November 30, 2018, the alleged onset date.

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), asthma, lumbar degenerative disc disease, obesity, and tobacco abuse.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except that he can only occasionally utilize his right lower extremity for pushing, pulling, and operation of foot controls; can only occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; is precluded from climbing ladders, ropes, or scaffolds and from crawling; is required to avoid concentrated exposure to temperature extremes, excessive vibration, and environmental irritants; is required to avoid all work exposure to unprotected heights and hazardous machinery; and requires the use of a portable oxygen device.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1982] and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of 'not disabled,' whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2018 through the date of this decision.

AR 29-37.

## II.   Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.    Claims**

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred in evaluating the medical opinions; and (2) the ALJ improperly discounted plaintiff's testimony about his symptoms.

**IV.    Analysis**

A. Medical Opinions

Plaintiff argues that the ALJ failed to articulate his reasons for finding two consulting doctors' opinions partially persuasive, as required by agency regulations. Plaintiff also argues that the ALJ failed to adequately develop the record because he should have sought a medical opinion on new evidence submitted at the hearing.

1. State Agency Opinions

The ALJ considered the opinions of two State agency medical consultants who reviewed plaintiff's medical records in 2019. Dr. Atiya Lateef opined in July 2019 that plaintiff was limited to a light physical RFC with postural and environmental limitations due to lumbar spine issues, chronic back pain, and asthma. AR 76-80. Dr. J. Pham opined in September 2019 that plaintiff was limited to a medium physical RFC due to mild lumbar issues and obesity. AR 89-90.

The ALJ found both opinions "partially persuasive," noting that the assessments were "supported with the medical evidence of record available to them up until September 2019." AR

5

35.  However, "evidence considered at the hearing level, including records from plaintiff's

treating pulmonary specialist[2], as well as a considerable attempt to afford the claimant the benefit

of any reasonable doubt, has led to the assessment of a greater level of exertional limitation[,]"

i.e., a sedentary RFC.  AR 35; *see also* AR 34 ("The assessment of the claimant's [RFC]

represents an attempt to afford the claimant the benefit of any reasonable doubt, and incorporates

a greater level of exertional restriction than was posited by any treating, examining, or reviewing

medical source.").  The ALJ did not specify which portions of Dr. Lateef's or Dr. Pham's

opinions he found persuasive, nor did he explain how aspects of these opinions were supported

(or not supported) by record evidence.

However, the ALJ did generally describe the evidentiary basis for the assessed physical

RFC, writing as follows:

> The assessed restriction on the right lower extremity use reflects early findings of foot weakness and reflex deficits, findings generally absent from later records.  The claimant's assessed postural limitations reflect findings of back pain and range of motion limitations, as well as consideration of the claimant's obesity under SSR 19-2p.  His respiratory impairments are the primary basis for the assessed environmental restrictions, restrictions that incorporate the maximum level of limitation posited by the State agency medical consultants.

AT 34 (record citations omitted).  The ALJ also considered daily activities in formulating the

RFC for sedentary work.  AR 34-35.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct

RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the

ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical

opinion over another.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v.

Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a

treating doctor and his or her notes, without even mentioning them").

The Ninth Circuit previously has required that, in order to reject an uncontradicted

opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons

---

[2] Citing AR 594-653 (treatment records through November 2020).

that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675.

However, for disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Filed in 2019, plaintiff's application is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). When a single medical source provides multiple opinions and findings, the ALJ must articulate how they were considered in a single analysis. 20 C.F.R. § 416.920c(b)(1).

Here, the ALJ did not articulate how he considered the factors of supportability and consistency with respect to the State agency physicians' opinions. Under the applicable regulations, this was error. *See P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3

1    (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,'

2    deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ

3    must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s]

4    all of the medical opinions.")  However, because the ALJ determined that plaintiff was more

5    limited than either agency physician opined—finding plaintiff limited to sedentary work, rather

6    than medium or light work—his failure to explain why he found the opinions only partially

7    persuasive is harmless error.  *See Stout v. Comm'r,* 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's

8    error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's

9    ultimate disability conclusion").

10         2.   New Evidence Submitted at Hearing

11        Plaintiff argues that the ALJ had a duty to obtain opinion testimony on the limiting effects

12   of medical evidence submitted in November 2020, more than a year after the consulting

13   physicians' review of the record.  The ALJ discussed this evidence in his decision and

14   incorporated it into the RFC.  AR 33-35.

15        At the November 2020 hearing, the ALJ noted that recent treatment records from

16   plaintiff's lung specialist had been submitted the day before the hearing.  AR 46, 57. Plaintiff's

17   counsel agreed to submit additional records after the hearing for the ALJ's review.  AR 70-71.  At

18   the time, plaintiff's counsel did not suggest that the ALJ required the assistance of a medical

19   expert or consultative examiner to properly assess these new records.  Thus, plaintiff waived his

20   instant challenge to the development of the record by failing to raise it before the ALJ.  "[W]hen

21   claimants are represented by counsel, they must raise all issues and evidence at their

22   administrative hearings in order to preserve them on appeal."  *Meanel v. Apfel*, 172 F.3d 1111,

23   1115 (9th Cir. 1999); *see Josue R. v. Kijakazi*, 2023 WL 2188693, *2 (E.D. Cal. Feb. 23, 2023)

24   (if plaintiff, represented by counsel at the hearing, "believed that the ALJ needed to develop the

25   record further because it was lacking evidence of plaintiff's physical abilities during the relevant

26   period, he should have raised that issue at the hearing.  Plaintiff's failure to do so waived the

27   issue.") (citing *Meanel*, 172 F.3d at 1115).

28   /////

Moreover, as in *Josue R.*, even if plaintiff had not waived this argument, he has not shown

that the ALJ was required to develop the record as he contends.  "An ALJ's duty to develop the

record further is triggered only when there is ambiguous evidence or when the record is

inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453,

459-60 (9th Cir. 2001); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

(explaining that "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to

allow for proper evaluation of the evidence," triggers the ALJ's duty to further develop the

record).  A consultative examination may be ordered "to try to resolve an inconsistency in the

evidence, or when the evidence as a whole is insufficient to allow" an ALJ to make a

determination on a claim.  20 C.F.R. § 404.1519a(b).

In his decision, the ALJ considered recent treatment records by pulmonologist Dr. Rafael

Lupercio, writing in part:

> During a July 7, 2020 evaluation[3], Dr. Lupercio noted the claimant
> did [have] significant limitations for his overall lung capacity
> according to the Pulmonary Function Test results[4]; however, he was
> hopeful about improving the claimant's overall ability to improve air
> in and out of his system but it was imperative that the claimant
> discontinued tobacco use.  While there is evidence the claimant at
> times utilized Chantix for smoke cessation, treatment records from
> the claimant's primary care providers between January and October
> 2020 further indicate that the claimant continued to smoke despite
> his testimony that he quit in 2019.[5]

AR 34.  The ALJ did not find this evidence ambiguous or inconsistent, but considered it in

formulating a sedentary RFC with the use of a portable oxygen device.

Nor was the ALJ precluded from interpreting medical evidence such as the 2020

pulmonary function test.  Per the Ninth Circuit, ALJs are presumed "capable of independently

---

[3] Citing AR 594-596 (July 7, 2020 pulmonary follow-up evaluation by Dr. Lupercio).

[4] Citing AR 627-628 (July 7, 2020 pulmonary function test).

[5] Citing AR 615 (June 23, 2020 progress notes stating that plaintiff "started smoking again since Covid 19 stay at home orders" at rate of 10 cigarettes a week), 621-622 (October 22, 2020 progress notes stating that plaintiff was currently smoking 4-5 cigarettes a day).

reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see also Bufkin v. Saul*, 836 Fed. Appx. 578, 579 (9th Cir. 2021) (unpublished) (ALJ properly considered "all of the various types of evidence in the medical record, including objective evidence such as x-rays, [plaintiff's] treatment history, and clinical findings, and properly translated and incorporated this evidence into an RFC finding").  Here, putting aside the issue of waiver, plaintiff has not shown that the ALJ had a duty to obtain a medical opinion about the 2020 evidence, nor that this evidence was inconsistent with the RFC.

B. Credibility

Plaintiff next claims that the ALJ erred by discounting plaintiff's credibility as to his subjective symptoms.  Plaintiff argues that the ALJ failed to identify the testimony he found not credible and link these findings to evidence in the record.

The ALJ determined that, while plaintiff was severely impaired by COPD, asthma, lumbar degenerative disc disease, obesity, and tobacco abuse, "the severity of the conditions as alleged by the claimant is not generally consistent with the objective medical evidence and other evidence[.]"  AR 32.  Discussing plaintiff's credibility, the ALJ wrote in part:

> Although the claimant testified at his hearing that he essentially quit smoking in November 2019, his medical records demonstrate the invalidity of that testimony and include diagnoses of tobacco abuse[6]. The claimant's records further describe a range of daily activities far less limiting than were described at the hearing, including active involvement in a protracted residential move during which he did not

---

[6] Citing AR 594-596 (July 2020 pulmonologist evaluation noting that plaintiff should discontinue smoking), 617-618 (July 2020 treatment notes stating that plaintiff currently smoked four cigarettes per day), 621 (October 2020 treatment notes stating same).

/////

10

use his prescribed oxygen[7], repairing his wife's car[8], shopping, spending time with friends, and the performance of household chores.[9]

AR 34-35.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and

---

[7] Citing AR 606 (January 2020 note describing a recent "prolonged move from one house to another" with plaintiff spending "long days in the cold/at night without [oxygen] on, exerting himself").

[8] Citing AR 609 (February 2020 note stating that plaintiff "has been working on his wife's car and reports he has to take breaks from lying underneath it").

[9] Citing AR 222-226 (August 2019 exertional activities questionnaire). Plaintiff indicated on this form that he spent time with friends, watching as they worked on cars, and "some time with shopping and chore" [sic] (AR 222), but elsewhere indicated that he did not do shopping or household chores (AR 224), though he was able to water the yard and garden. AR 224-225.

1    effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

2    *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

3    treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

4    in determining whether the alleged associated pain is not a significant nonexertional impairment.

5    *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

6          Here, the ALJ considered objective evidence of impairment, including the record of

7    treatment for plaintiff's lumbar spine degenerative disc disease.  AR 33-34.  The ALJ noted that,

8    in a July 2019 examination, plaintiff "continued to report lumbar back pain with clinical findings

9    noting positive bilateral straight leg raises.  Nevertheless, the result of motor strength, sensory,

10   and deep tendon reflexes were all normal."  AR 33, citing AR 301.  The ALJ noted that plaintiff

11   was prescribed Norco for back pain in September 2019, and that, "[f]ollowing this examination,

12   there is no other evidence of treatment for the claimant's low back impairment" except for

13   plaintiff's report in 2020 that he was rationing his Norco.  AR 33.

14         Plaintiff's failure to seek treatment for lumbar pain after September 2019 was a valid

15   consideration in assessing the credibility of plaintiff's testimony about debilitating back

16   problems.  The ALJ also properly considered the inconsistency between plaintiff's testimony that

17   he quit smoking in the fall of 2019 and evidence that he continued a daily smoking habit well into

18   2020.  The ALJ also compared plaintiff's testimony about severe limitations on physical activities

19   with evidence that he did physical work in connection with a house-to-house move and worked

20   on his wife's car during the alleged period of disability.  Moreover, even while discounting

21   plaintiff's credibility to some degree, the ALJ noted that the assessed RFC "represents an attempt

22   to afford the claimant the benefit of any reasonable doubt, and incorporates a greater level of

23   exertional restriction than was posited by any treating, examining, or reviewing medical source."

24   AR 34.  Plaintiff has not shown that the ALJ erred in assessing credibility, nor that the evidence

25   warranted a more limited RFC than an ability to perform sedentary work with a portable oxygen

26   tank.

27   /////

28   /////

12

1    **V.       Order**

2           For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 18) is

3    DENIED, defendant's cross-motion for summary judgment (ECF No. 120) is GRANTED, and

4    the Clerk is directed to enter judgment in defendant's favor and close the case.

5

6    DATED: June 9, 2023.

7                                                   EDMUND F. BRENNAN
                                                    UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28